```
          IN THE UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF ARKANSAS
                   FAYETTEVILLE DIVISION
```

JUSTIN SLAUGHTER                                          PLAINTIFF

VS.                         CASE NO. 06-5222

JEREMY GRAMMAR, JASON FRENCH,
and TRAVIS LEE, each in their
official and individual capacity                         DEFENDANTS

### MEMORANDUM OPINION AND ORDER

Now on this 11th day of October, 2007, comes on to be considered **Defendants' Motion for Summary Judgment (Doc. 11)**. The Court, being well and sufficiently advised, concludes that the defendants' motion should be **GRANTED IN PART** and **DENIED IN PART**. The Court finds and orders as follows with respect thereto:

**BACKGROUND**

1.   Plaintiff Justin Slaughter brings this action pursuant to 42 U.S.C. § 1983.  Plaintiff names as defendants Fayetteville, Arkansas Police Officers Jeremy Grammar, Jason French, and Travis Lee, in their individual and official capacities.

2.   Plaintiff alleges that defendants violated his Fourth and Fourteenth Amendment rights during a traffic stop conducted on or about November 26, 2003.

3.   Defendants move for summary judgment.  Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c).  The Court considers the facts,

and the inferences to be drawn from them, in the light most favorable to the nonmoving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  Pursuant to Local Rule 56.1, the parties have filed statements of facts which they contend are not in dispute.  Based on these submissions and the exhibits attached thereto, the following is a summary of the relevant facts, which are undisputed except where otherwise noted:

    a.   At approximately 6:45 p.m. on November 26, 2003, plaintiff was driving a friend's vehicle down Garland Avenue in Fayetteville when Officer French initiated a traffic stop.  According to Officer French, he pulled plaintiff over because he observed the front and rear passenger tires of plaintiff's vehicle abruptly veer off of the roadway onto the gravel shoulder and then come back onto the roadway.  At his deposition, Officer French explained that he initiated the traffic stop under a city ordinance prohibiting careless driving, which was defined as "driving in a manner that would endanger yourself or others."  (Doc. 11 Ex. A at pg. 10.)

    b.   At his deposition, plaintiff explained that there were trash cans and "close mailboxes" on the side of the road and that he merely "moved over a little bit" to avoid hitting them, but he did not cross over the yellow line of the roadway.  (Doc. 11 Ex. B at pgs. 37-38.)  When subsequently asked during his deposition whether he remembered telling Officer French that he was dodging

something in the road, plaintiff acknowledged, "I remember telling him that there might have been something in the middle of the road."  (Id at 49.)

     c.   The traffic stop was videotaped by a camera in Officer French's patrol car.  The videotape begins at 6:45 p.m. with Officer French pulling over plaintiff's vehicle.  Officer Travis Lee assisted Officer French with the traffic stop.  Officer French advised plaintiff that his vehicle went off the roadway and plaintiff explained that he was dodging something he saw in the roadway.  Plaintiff provided Officer French with his driver's license, and advised him that he was driving a friend's car.

     d.   Officer French returned to his patrol car and, at 6:47 p.m., there was a conversation in the patrol car between Officer French and Officer Lee.  Officer French explained to Officer Lee that he smelled a strong air freshener in plaintiff's vehicle.[1]  He also explained that while plaintiff stated that he swerved to avoid something in the roadway, Officer French did not see anything in the roadway.

     e.   At 6:49 p.m., Officer French asked plaintiff for permission to search his vehicle.  Plaintiff denied Officer

---

[1] The Court does not consider this fact to be in dispute. While plaintiff testified at his deposition that the smell of air freshener did not stand out to him, he acknowledged that he was having allergy problems at the time and that he was not sure if the car smelled of air freshener. (Doc. 14 Ex. Ex. 1 pgs. 22-23.)

French's request, stating that he was in a hurry.  Officer French then advised plaintiff that, based on his driving and the strong smell of air freshener in his car, he was going to call for a drug dog and have it sniff the vehicle.  At his deposition, Officer French explained that he decided to call for a drug dog because of plaintiff "running off the road, the smell of the air-freshener, the borrowed vehicle," and plaintiff had also had difficulty rolling down the window when Officer French first approached his vehicle.

     f.   Officer French asked plaintiff to exit his vehicle while they waited for the drug dog to arrive and Officer French then conducted a brief pat-down search.  While plaintiff contends that Officer French reached into his sweatshirt pocket during the search, the video of the traffic stop reflects that Officer French only patted down plaintiff's outer clothing.

     g.   At 6:52 p.m., Officer Jeremy Grammar arrived on the scene with the drug dog, and the dog sniff began at 6:53 p.m.  The video reflects that the dog, held on a leash by Officer Grammar, circled the vehicle three times, and put his front paws up on both the driver's side door and the passenger's side door.  The dog appeared to do this on cue from Officer Grammar.  After the dog circled the vehicle the third time, he stopped, stared at Officer Grammar, and then he and Officer Grammar returned to the driver's side door of the vehicle and the dog again put his paws up on the door.

According to a K-9 Activity Report completed by Officer Grammar:

> [The dog] sniffed the outside of the vehicle and showed a change in behavior by scratching on the driver's door. I opened the door and [the dog] sniffed the inside. He showed a change in behavior under the driver's seat by turning his head and sticking it under the seat. I located a small amount of marijuana shake under the seat. [The dog] also showed a change in behavior by scratching on the st[ee]ring wheel.

(Doc. 11 Ex. E.)

    h.    According to plaintiff, the dog made no indication that he "hit" on the car until Officer Grammar "pulled the dog toward the car and appeared to coach the dog into 'hitting' the car." (Doc. 16 ¶ 3.)  Plaintiff did not see the dog hit on anything in the car before Officer French and Officer Grammar entered the car and starting searching it.  The video of the traffic stop shows the dog entering the car but the dog's sniff of the inside of the car cannot be clearly seen.

    i.    After the officers searched the car, Officer Grammar advised plaintiff that he located a small amount of marijuana shake (seeds and stems) under the driver's seat.  Plaintiff explained that he was driving a friend's vehicle and that he did not know anything about it.  According to plaintiff, the officers never showed him the marijuana shake they allegedly found.

    j.    At 7:01 p.m., approximately 16 minutes after the traffic stop was initiated, plaintiff was advised that he was free to go. Officer French elected not to cite plaintiff for careless driving because he did not think it was necessary.

**DISCUSSION**

4. Defendants argue that they are entitled to summary judgment because they did not violate plaintiff's constitutional rights. Defendants alternatively argue that they are entitled to qualified immunity for any violation of plaintiff's constitutional rights, as these rights were not clearly established at the time of the traffic stop. The Court will address each of the constitutional violations alleged by plaintiff – the traffic stop, the pat-down of plaintiff, the dog sniff of the outside of the car, and the dog sniff and search of the inside of the car – in turn.

5. <u>Traffic Stop</u>

For an officer to perform an investigatory stop of a vehicle, there must be reasonable suspicion as required under <u>Terry v. Ohio</u>, 392 U.S. 1 (1968). <u>See</u> <u>United States v. Bell</u>, 480 F.3d 860, 863 (8th Cir. 2007) (applying the <u>Terry</u> standard of reasonable suspicion to an investigatory traffic stop).

Plaintiff contends that he did not veer off the roadway, as Officer French accused him of doing, but that he merely "moved over a little bit" to avoid hitting something – plaintiff has given conflicting accounts of whether it was something on the side of the road or the middle of the road. Plaintiff contends that he did not commit a traffic violation because he did not cross the yellow line of the roadway.

Erratic driving, such as swerving, can provide reasonable suspicion for a traffic stop even if it does not constitute a traffic violation. See United States v. Walker, 494 F.3d 688, 692 (8th Cir. 2007). It is undisputed that Officer French did not see anything in the road. Accordingly, the Court finds that when Officer French observed plaintiff swerving for no apparent reason – even if he did so within his own lane and did not cross the yellow line – Officer French had reasonable suspicion to conduct an investigatory traffic stop. The Court, therefore, concludes that Officer French did not violate plaintiff's rights when he initiated the traffic stop.

    6.   <u>Pat-Down and Dog Sniff of the Exterior of the Car</u>

When police stop a motorist, an officer may detain the occupants of the vehicle while the officer completes routine tasks related to the traffic violation, including checking the driver's license and registration, checking the driver's criminal history, and writing a citation or warning. See United States v. Olivera-Mendez, 484 F.3d 505, 509 (8th Cir. 2007). If the driver's answers to the officer's inquiries and other surrounding objective circumstances give rise to a reasonable suspicion that "'criminal activity may be afoot,'" the officer may expand the scope of his investigation. United States v. Hanlon, 401 F.3d 926, 929 (8th Cir. 2005) (quoting Terry, 392 U.S. at 30).

"Whether the particular facts known to the officer amount to an objective and particularized basis for a reasonable suspicion of criminal activity is determined in light of the totality of the circumstances." United States v. Halls, 40 F.3d 275, 276 (8th Cir. 1994), cert. denied, 514 U.S. 1076 (1995). The focus on the totality of the circumstances means that even a series of acts innocent in themselves may give rise to a reasonable suspicion of criminal activity when taken together. See Hanlon, 401 F.3d at 929.

Officer French explained that he decided to expand the scope of the traffic stop and call for a drug dog based on plaintiff's erratic driving, the strong smell of air-freshener in his car, the fact that he was driving a borrowed vehicle, and the fact that he had difficulty rolling down his window. The Court finds that the totality of these circumstances, while innocent in themselves, were sufficient to create a reasonable suspicion that plaintiff was under the influence and in possession of drugs. See Olivera-Mendez, 484 F.3d at 513 (air freshener supported a suspicion that suspect was attempting to mask the odor of illegal drugs); United States v. Fuse, 391 F.3d 924, 929 (8th Cir. 2004), cert. denied, 544 U.S. 990 (2005) (officers' observations during traffic stop were sufficient to create reasonable suspicion to support the motorist's detention for a dog sniff after the initial stop was completed; several facts supported reasonable suspicion, including a strong

odor of air freshener, which is commonly used to mask the odor of controlled substances, and the fact that the car did not belong to the motorist).

The Court, therefore, concludes that the detention of plaintiff for a few extra minutes to allow for a drug dog to arrive and sniff the vehicle was justified and did not violate plaintiff's rights.

The Court also concludes that Officer French did not violate plaintiff's rights when he asked plaintiff to exit his vehicle and then conducted a brief pat-down search.  See Walker, 494 F.3d at 693 (during a Terry stop, officers are permitted to remove occupants from vehicle and check for weapons).

    7.   Dog-Sniff and Search of the Inside of the Car

Plaintiff disputes whether the drug dog actually "hit" on the outside or inside of the car and, even if he did hit, whether Officer Grammar coached him into doing so.  Defendants have not offered an affidavit or deposition testimony from Officer Grammar or offered any other evidence explaining the cues that appeared to be used by Officer Grammar during the dog sniff or why the dog's behavior was construed as a hit.  The video of the dog sniff reveals that the dog circled the vehicle three times without a hit, stopped and stared at Officer Grammar, and then he and Officer Grammar returned to the driver's side door of the vehicle.  While the dog put his paws up on the driver's side door at this point, he

had also done this earlier when he was circling the vehicle and this behavior apparently was not construed as a hit.

The Court finds that there are factual issues in dispute as to whether the drug dog actually hit on plaintiff's vehicle and, if so, whether Officer Grammar coached him into doing so. If Officer Grammar coached the dog and/or knew that the dog did not actually hit on the vehicle, then the dog sniff inside plaintiff's vehicle and the search of the inside of plaintiff's vehicle violated his clearly established rights. Officer Grammar, therefore, is not entitled to qualified immunity on this claim. See <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982) (public employees are shielded from liability if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"). Any liability on this claim, however, is limited to Officer Grammar, as Officer French and Officer Lee did not participate in the dog sniff and there is nothing indicating that they were aware that the dog did not actually hit on the vehicle or that Officer Grammar was coaching the dog in any way.

**CONCLUSION**

8. Based on the foregoing, the Court concludes as follows:

\*    **Defendants' Motion for Summary Judgment (Doc. 11)** should be and hereby is **DENIED** on plaintiff's claim against Officer Grammar regarding the dog sniff of the inside of plaintiff's

vehicle and the search of the inside of the vehicle.  This claim against Officer Grammar will proceed to trial, as scheduled, the week of October 29, 2007.

* **Defendants' Motion for Summary Judgment (Doc. 11)** is **GRANTED** with regard to plaintiff's remaining claims, including all claims against Officer French and Officer Lee.  Accordingly, all claims except for the one identified above against Officer Grammar are hereby **DISMISSED**.  Further, Officers French and Lee are **DISMISSED** as defendants to this action.

IT IS SO ORDERED.

/S/JIMM LARRY HENDREN
JIMM LARRY HENDREN
UNITED STATES DISTRICT JUDGE